IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AMY JO MANN,

        Plaintiff,

vs.                                  Case No. 12-4056-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

1

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On December 10, 2010, administrative law judge (ALJ) Michael D. Shilling issued his decision (R. at 14-25). Plaintiff alleges that she has been disabled since July 14, 2008 (R. at 14). Plaintiff is insured for disability insurance

benefits through June 30, 2012 (R. at 16).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 16).  At step two, the ALJ found that plaintiff has the following severe impairments:  fibromyalgia, obesity, recurrent ventral hernia, chronic bronchitis, mild degenerative disc disease, affective mood disorder (situational to her medical problems), anxiety-related disorder and dysthymic disorder (R. at 16).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17).  After determining plaintiff's RFC (R. at 18), the ALJ determined at step four that plaintiff is unable to perform her past relevant work (R. at 23).  At step five, the ALJ found that plaintiff could perform jobs that exist in significant numbers in the national economy (R. at 24-25).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 25).

**III.  Did the ALJ err at step two?**

At step two, the ALJ noted that plaintiff suffered from irritable bowel disease and interstitial cystitis.  The ALJ concluded that nothing in the record established that these impairments caused any significant limitation in plaintiff's ability to perform basic work activities.  Therefore, the ALJ concluded that they were not severe impairments (R. at 16).

In Brescia v. Astrue, 287 Fed. Appx. 626, 628-629 (10th Cir. July 8, 2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments. The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. In Hill v. Astrue, 289 Fed. Appx. 289, 291-292 (10th Cir. Aug. 12, 2008), the court held that once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. The ALJ's failure to find that additional alleged impairments are also severe is not in itself cause for reversal. However, the ALJ, in determining plaintiff's RFC, must consider the effects of all of the claimant's medically determinable impairments, both those he deems "severe" and those "not severe."

In making his RFC findings, the ALJ stated that he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence; the ALJ also stated that he considered the opinion evidence (R. at 18). Furthermore, the

6

ALJ indicated that in making his RFC findings, he "must consider all of the claimant's impairments, including impairments that are not severe" (R. at 15). In addition, plaintiff failed to cite to any medical evidence indicating that plaintiff's irritable bowel disease or interstitial cystitis would have more than a minimal impact on plaintiff's ability to work or would result in limitations in her ability to work. Dr. Silverman, plaintiff's treating physician, prepared a physical RFC assessment, and it does not mention either impairment. In light of the fact that the ALJ found other severe impairments at step two, considered all symptoms and evidence when making RFC findings for the plaintiff, considered all of plaintiff's impairments, including non-severe impairments when making his RFC findings, and the failure of plaintiff to cite to any medical evidence that plaintiff had limitations from these impairments that were not included in the ALJ's RFC findings, the court finds that the ALJ did not err in his consideration of plaintiff's irritable bowel disease and interstitial cystitis.

**IV. Did the ALJ err in his consideration of the medical opinion evidence?**

Dr. Silverman is plaintiff's treating physician, who has treated plaintiff since March 2007 (R. at 463). On August 29, 2010, Dr. Silverman completed a physical RFC assessment on the plaintiff. He opined that she can lift less than 10 pounds

7

occasionally and frequently. She can only stand/walk for 2 hours in an 8 hour day, and can only sit for 2 hours in an 8 hour day. She needs to be able to shift at will from sitting to standing/walking, and needs to lie down at unpredictable times during a work shift (R. at 588-591). The vocational expert (VE) testified that a person with these limitations could not work (R. at 56).

The ALJ gave "little" weight to the opinions of Dr. Silverman for the following reasons:

> Evidence of such limitations is not documented in Dr. Silverman's treatment notes. **It appears that the limitations suggested by Dr. Silverman are based on the claimant's subjective complaints alone, rather than a trial and error method of determining the claimant's capacity in a medical setting. Dr. Silverman's level of treatment for the claimant is not consistent with the disabling limitations he has suggested**…he has only prescribed medication for the claimant and there is no evidence that the claimant has been referred for consultation with any specialist physician (such as a rheumatologist or physical medicine physician) for techniques and treatments to lessen the claimant's fibromyalgia pain. Dr. Silverman has recommended physical therapy and pool/water therapy for the claimant about four times according to the medical record, but such treatment has not been the focus of his recommendations. **The lack of specialist referrals or suggestions for non-medication treatment suggests that the claimant's symptoms must be mild to moderate in nature and are well controlled by medication.**

(R. at 19, emphasis added).

8

First, the ALJ stated that it appeared that Dr. Silverman's opinions were based on plaintiff's "subjective complaints alone, rather than a trial and error method of determining the claimant's capacity in a medical setting" (R. at 19). In the case of Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." Id. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." Id. at 1253.

Subsequently, in the case of Victory v. Barnhart, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005), the court held:

> The ALJ's finding that Dr. Covington's opinion was based on claimant's own subjective report of her symptoms

> impermissibly rests on his speculative,
> unsupported assumption. See Langley, 373
> F.3d at 1121 (holding that ALJ may not
> reject a treating physician's opinion based
> on speculation). We find no support in the
> record for the ALJ's conclusion. Nothing in
> Dr. Covington's report indicates that he
> based his opinion on claimant's subjective
> complaints, and the ALJ's finding ignores
> all of Dr. Covington's examinations, medical
> tests, and reports. Indeed, the ALJ's
> discussion of Dr. Covington omits entirely
> his March 22, 2001 examination and report.
> His April 3, 2001 statement might well have
> been based on his recent first-hand
> examination and observation of claimant
> during this examination, performed less than
> two weeks earlier, rather than on claimant's
> subjective complaints, as the ALJ
> speculated. See Morales v. Apfel, 225 F.3d
> 310, 317 (3d Cir.2000) (noting that the
> treating physician's opinion may "reflect
> expert judgment based on a continuing
> observation of the patient's condition over
> a prolonged period of time").

121 Fed. Appx. at 823-824.

As Langley makes clear, the ALJ must have a legal or evidentiary basis for asserting that a medical source report was based on plaintiff's subjective complaints. However, the ALJ did not have either a legal or evidentiary basis for his assertion that Dr. Silverman's opinions were based on plaintiff's subjective complaints alone. In fact, the assessment filled out by Dr. Silverman states that he is to give his opinions based on his examination of the plaintiff (R. at 588). Dr. Silverman later states that the limitations he set have been noted on many office visits (R. at 589). When asked

what medical findings support the limitations he set out, Dr. Silverman wrote "physical examination of muscle weakness and tenderness" (R. at 590).  Therefore, the ALJ clearly erred by discounting the opinions of Dr. Silverman based on the erroneous conclusion that his opinions were solely based on plaintiff's subjective complaints.

Second, the ALJ discounted the opinions of Dr. Silverman because his level of treatment was not consistent with the disabling limitations that he had suggested, and stated that the lack of a referral or other suggestions for treatment suggested only mild or moderate symptoms which are well controlled by medication alone (R. at 19).  However, the ALJ did not cite to any medical source or opinion to support these assertions.  An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion. McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002).  The adjudicator is not free to substitute his own medical opinion for that of a disability claimant's treatment providers. Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004).  An ALJ is not entitled to *sua sponte* render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence and make disability determinations;

he is not in a position to render a medical judgment. <u>Bolan v. Barnhart</u>, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).

This issue has repeatedly been addressed by this court. In the case of <u>Morgan v. Astrue</u>, Case No. 08-1392-JTM (April 29, 2010; Doc. 16 at 16-17), the court faced the same issue as is before the court in this case. The court held:

> **...the ALJ also relied on the fact that plaintiff had not had surgery or inpatient hospitalization, and had not been referred to physical therapy**, when considering the medical evidence relating to plaintiff's RFC, including the opinions of Dr. Gillenwater (R. at 26; Doc. 13 at 7). **However, the ALJ did not cite to any evidence regarding the relevance or significance, if any, of the fact that plaintiff had not had surgery, inpatient hospitalization, or physical therapy**. In the case of <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1221 (10th Cir. 2004), the ALJ noted that the claimant did not require an assistive device for his neck. The court held that there is no evidence that any physician recommended such a device or suggested that one would have provided any pain relief. The court stated that an ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors. As noted above, the ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. <u>Bolan [v. Barnhart]</u>, 212 F. Supp.2d [1248, 1262 (D. Kan. 2002)].
> **In the absence of any medical evidence indicating the relevance or significance of the fact that plaintiff did not receive certain treatments, the ALJ is in no position to render a medical judgment regarding the relevance or significance of the fact that plaintiff did not receive**

12

> **certain treatments**. Park v. Astrue, Case
> No. 07-1382-MLB, 2008 WL 4186871 at *5 (D.
> Kan. Sept. 9, 2008, Doc. 17 at 11-12); see
> Newman v. Astrue, Case No. 08-1391-JTM (D.
> Kan. Feb. 2, 2010; Doc. 18 at 10-12)(**ALJ
> erred by failing to cite to any medical
> evidence to support his assertion that
> plaintiff had not received the type of
> treatment one would expect for a totally
> disabled individual**); Burton v. Barnhart,
> Case No. 06-1051-JTM (D. Kan. Nov. 1, 2006;
> Doc. 12 at 15)(ALJ erred by relying on the
> lack of certain types of treatment in the
> absence of any evidence that such treatment
> was recommended, would have lessened the
> claimant's limitations, or provided pain
> relief); Mazza v. Barnhart, Case No. 06-
> 1018-JTM (D. Kan. Oct. 25, 2006; Doc. 13 at
> 20)(same). For this reason, **the ALJ erred
> by relying on the absence of surgery,
> hospitalization, or physical therapy without
> any medical evidence regarding the relevance
> or significance of the lack of such
> treatment**.

(emphasis added); quoted with approval in Simpson v. Colvin, Case No. 12-1077-SAC (D. Kan. March 13, 2013; Doc. 30 at 12-14)(ALJ stated that plaintiff had not received the type of medical treatment one would expect for an individual with disabling pain); Eckert v. Astrue, Case No. 12-2142-SAC (D. Kan. Feb. 7, 2013; Doc. 16 at 9-11)(same); Dannels v. Astrue, Case No. 10-1416-SAC (D. Kan. Dec. 20, 2011; Doc. 19 at 9-11)(same).

As in the above cases, the ALJ asserted that plaintiff had not received treatment consistent with disabling limitations. However, the ALJ cited to no evidence or medical authority in support of these assertions, and did not cite to any statute,

13

regulation or ruling in support of these assertions. The ALJ clearly erred by relying on these assertions as a basis for discounting the weight accorded to the treating source opinions.

The court will next address the mental RFC assessment by Dr. Kaspar. The ALJ's RFC findings include the following mental limitations:

> She is limited to jobs that do not demand attention to details or complicated instructions or job tasks and only occasional cooperation and interaction with the general public. She may work in proximity to co-workers, but is limited to jobs that do not require close cooperation and interaction with co-workers (in that she would work best in relative isolation). She retains the ability to maintain attention and concentration for minimum 2-hour periods at a time, adapt to changes in the work place on a basic level, and accept supervision on a basic level.

(R. at 18).

Dr. Kaspar prepared a state agency mental RFC assessment. He found plaintiff had moderate limitations in the following categories:

> The ability to understand, remember and carry out detailed instructions.
>
> The ability to maintain attention and concentration for extended periods.
>
> The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.
>
> The ability to sustain an ordinary routine without special supervision.

> The ability to work in coordination with or
> proximity to others without being distracted
> by them.
>
> The ability to complete a normal workday and
> workweek without interruptions from
> psychologically based symptoms and to
> perform at a consistent pace without an
> unreasonable number and length of rest
> periods.
>
> The ability to accept instructions and
> respond appropriately to criticism from
> supervisors.
>
> The ability to get along with coworkers or
> peers without distracting them or exhibiting
> behavioral extremes.
>
> The ability to maintain socially appropriate
> behavior and to adhere to basic standards of
> neatness and cleanliness.
>
> The ability to respond appropriately to
> changes in the work setting.
>
> The ability to be aware of normal hazards
> and take appropriate precautions.
>
> The ability to set realistic goals or make
> plans independently of others.

(R. at 522-523). His assessment was affirmed by Dr. Schulman (R. at 584).

The ALJ accorded "significant" weight to their opinions, and stated that their limitations have been incorporated into the ALJ's RFC findings (R. at 21). However, the ALJ's RFC findings fail to include many of the limitations contained in the assessment, and fail to provide any explanation for his

15

conclusion that a person with a moderate limitation in the ability to maintain attention and concentration for extended periods could maintain attention and concentration for a minimum 2-hour period at a time. Plaintiff asserts that this constituted error by the ALJ (Doc. 14 at 35); defendant's brief failed to address this issue.

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

In the case of Martinez v. Astrue, 422 Fed. Appx. 719, 724-725 (10th Cir. Apr. 26, 2011), the court held that the ALJ erred by failing to include all of the limitations found by Dr. LaGrand without explaining why he rejected some of the limitations, especially in light of the ALJ's conclusion that

16

the medical source's opinion was entitled to "great weight." The ALJ simply ignored certain limitations contained in the medical report. The court held that the ALJ may have had reasons for giving great weight to some of the limitations set forth by the medical source, while rejecting other limitations. However, before rejecting some of the limitations, the ALJ was required to discuss why he did not include those limitations. An ALJ should explain why he rejected some limitations contained in a RFC assessment from a medical source while appearing to adopt other limitations contained in the assessment. Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). As in Haga, in the case before the court it is simply unexplained why the ALJ adopted some of the limitations contained in Dr. Kaspar's assessment, but not others.

The ALJ clearly erred by giving "significant" weight to the opinions of Dr. Kaspar, but then failing to include all of the limitations found by Dr. Kaspar without explaining why he rejected some of them. On remand, the ALJ will be required to comply with SSR 96-8p, including the requirement that if the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the medical opinion was not adopted.

In light of the ALJ's errors in his analysis of the opinions of Dr. Silverman and Dr. Kaspar, the court finds that the ALJ's RFC findings are not supported by substantial

evidence.  On remand, the ALJ will have to make new RFC findings after giving proper consideration to the opinions of Dr. Silverman and Dr. Kaspar.

**V.  Did the ALJ err in her evaluation of plaintiff's credibility?**

Plaintiff also asserts error by the ALJ in his credibility findings.  The court will not address this remaining issue because it may be affected by the ALJ's resolution of the case on remand after the ALJ gives proper consideration to the medical opinions of Dr. Silverman and Dr. Kaspar.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 28th day of August 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge